# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. MICHAEL SMALL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-00925     John T. Fowlkes, Jr., Judge**

---

**No. W2010-00470-CCA-R3-CD  - Filed March 28, 2011**

---

The Defendant-Appellant, Michael Small, was convicted by a Shelby County Criminal Court jury of two counts of aggravated robbery, Class B felonies.  On appeal, Small argues that the trial court erred in imposing a twenty-year sentence consecutive to his effective sentence of forty years for three previous convictions for aggravated robbery.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the Defendant-Appellant, Michael Small.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alexia Fulghum, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.**  On April 13, 2000, the victim, Rita Pafford, was working alone as a cashier and manager of a Shop-N-Go store in Memphis, Tennessee.  The victim had worked for about an hour that morning when two men wearing dark clothing walked into the store.  One of the men was heavy and short and the other man was taller and thinner.  The heavier and shorter man, later identified as Small, asked her to cut some meat.  The victim assisted a couple of other customers, who then left the store.  The victim went back to the meat counter and cut the meat as requested.  As she placed the meat on the counter, Small pointed the long barrel of a black gun at her forehead.

Small then pointed the gun at the back of the victim's head and ordered her to walk to the cash register. She complied, and Small ordered her to open the cash register and safe and to hand him "the [store's surveillance] video." The victim complied with Small's demands. She collected money from the register and safe, put it in a brown paper bag, and gave Small the money and the video.

As the victim was collecting the money from the register and the safe, Small noticed a gun near the safe. Small told the victim that she should not "even think about" grabbing that gun. He then took the gun, which was owned by the victim's son-in-law, and forced her into the back of the store. While she was in the back of the store, the victim heard a gunshot in the front part of the store. Shortly thereafter, she heard the front door to the store open, and she went to the front of the store and pressed the panic button. While the victim waited for the police to arrive, a woman named Tiffany Young, who had seen the two men leaving the store and dialed 911. The victim talked to police about the robbery. However, the victim was unable to identify the man who pointed the gun at her in a photographic lineup. The victim said that she "was afraid for [her] life" during the time she was held at gunpoint.

Tiffany Young told the police that she had been about to enter the Shop-N-Go on the morning of April 13, 2000, when she saw two men leaving the store. From her vantage point of ten feet away, Young said that it looked as if the men had just robbed the store. One of the men had a long gun stuffed inside his coat and had money in the pockets of his coat and clothes. When she saw the men leave, she called the police on her cell phone and then went inside the store and talked to the victim. Young also talked to the police the day of the robbery. At trial, Young identified Small, the Defendant-Appellant, as the individual with the gun and the money stuffed inside his coat. The police asked Young to view a photographic lineup on April 20, 2000, and she immediately identified Small as the man she saw leaving the store with a gun and money on his person.

Jeff Clark, a colonel with the Memphis Police Department, stated that he was the lead detective assigned to investigate the April 13, 2000 robbery of the Shop-N-Go. On April 20, 2000, he interviewed Small about the robbery, which resulted in Small signing a written statement confessing that he held the victim at gunpoint during the robbery. Colonel Clark stated that he never said anything to Small during the interview to lead him to believe that he would receive a more lenient sentence in exchange for confessing to the aggravated robbery charge.

Small testified at trial and denied any involvement in the robbery, despite the signed confession that he had given to Colonel Clark. Small claimed that he signed the confession because the police threatened him and because they promised him a sentence of eight years if he confessed to the offense.

**Sentencing Hearing.**  At the sentencing hearing on February 19, 2010, the State did not present testimony from any witnesses but entered the presentence report as an exhibit. The only witnesses offered by the defense were Small's younger sister, Ruthie Small Taylor, and her husband, Bryan Taylor.  Small also made a statement of allocution to the court.

Ruthie Taylor testified that Small, often got in trouble for substance abuse when he was an adolescent.  She stated that she had worked in the health care field for twenty-nine years and believed that Small's paranoia and anger issues contributed to his substance abuse. Ms. Taylor said that Small got married as an adult and attempted to support his five children as well as his wife's child from a prior relationship.  However, she said that it was difficult for Small to "keep a job" or "find a job" because of his history of criminal convictions and that Small's family was homeless at times.  She stated that during this time, Small "was using drugs to compensate for the problems that he [was] experiencing in his life."  Ms. Taylor said that their family helped pay for Small to go to a truck driving school, but Small was not able to find a job driving a truck because of his criminal background.  The trial court noted that Small listed only one job as a machine operator that lasted approximately five to six months in 1999 in the presentence report.  Upon examination by the court, Ms. Taylor stated that Small also worked for her husband in 1999 for approximately six or seven months.  In addition, she stated that Small did some "odd jobs such as painting, carpentry work for some people that lived in our neighborhood[.]"

Bryan Taylor, Ruthie Taylor's husband, testified that he gave Small a job working as a fork lift operator on an as needed basis for a period of six or seven months in 1999.  He said that Small actively sought work with his company during that time period and described Small as "an excellent employee."

During his statement of allocution, Small stated that he signed the written confession in this case only because he was threatened by the police.  He also asserted that the indictments in this case were "counterfeit."

At the conclusion of the sentencing hearing, the trial court merged Small's two convictions for aggravated robbery before sentencing him as a Range III, persistent offender to twenty years at forty-five percent served consecutively to his effective forty-year sentence for three prior convictions for aggravated robbery, which resulted in a net effective sentence of sixty years.  The judgments were entered on February 19, 2010, and Small subsequently filed a timely notice of appeal.

## ANALYSIS

**Consecutive Sentencing.** Small contends that the trial court erred in imposing a twenty-year sentence consecutive to his forty-year sentence for three prior convictions for aggravated robbery. He argues that the trial court's imposition of consecutive sentencing resulted in a sixty-year sentence, which was a greater sentence than deserved based on the offense and was not the least severe sentence necessary to achieve the purposes under the sentencing act. He suggests that the trial court could have protected society by imposing a concurrent sentence in this case, since the result would have been a net effective sentence of forty years.

In response, the State argues that the trial court properly considered the purposes and principles of the sentencing act before imposing a consecutive sentence in this case. Moreover, the State contends that Small met three of the statutory criteria for consecutive sentencing and that a finding of just one of the factors would have justified the imposition of a consecutive sentence. Finally, the State contends that the trial court properly considered whether Small's sentence was "justly deserved in relation to the seriousness of the offense" and was "no greater than that deserved[.]" T.C.A. § 40-35-102(1), -103(2) (1997). We agree with the State.

Although the date of the offenses in this case was April 13, 2000, Small was not sentenced until February 19, 2010. As such, we note that Small could have elected to be sentenced under the June 7, 2005 amendments to the sentencing act, which complied with Blakely v. Washington, 542 U.S. 296 (2004), so long as he executed a waiver of his ex post facto protections. See 2005 Tenn. Pub. Acts ch. 353, § 18. Because the record indicates that Small did not execute an ex post facto waiver, his sentence is governed by the pre-2005 sentencing act. Moreover, the transcript from the sentencing hearing clearly establishes that Small explicitly requested that he be sentenced under the pre-2005 sentencing act.

The pre-2005 sentencing act required the trial court to begin its determination of the appropriate sentence with a "presumptive sentence." T.C.A. § 40-35-210(c) (Supp. 1998). For Class B felonies, the presumptive sentence was the minimum sentence in the appropriate range for the offense. Id. As relevant here, when there were enhancement factors but no mitigating factors for a Class B felony, the trial court was allowed, but was not required, to set the defendant's sentence above the minimum in the range but still within the range. Id. § 40-35-210(d) (Supp. 1998).

In this case, the trial court sentenced Small as Range III, persistent offender. See id. § 40-35-107(a), (b) (1997). The trial court noted that Small had a undisputed total of six prior felony convictions including three Class B aggravated robbery convictions, a Class C aggravated burglary conviction, a Class C criminal attempt unlawful possession of a controlled substance with intent to sell, and a Class E theft of property conviction. In

addition, the court noted that Small had two convictions for attempt to commit a felony from 1988 and 1989, which were treated as felonies at the time of conviction. Small also had five misdemeanor convictions for simple assault, several misdemeanor convictions related to theft, and misdemeanor convictions for gambling, disorderly conduct, possession of marijuana, criminal trespass, aggravated criminal trespass, and obstructing a highway or other passageway.

Here, Small was convicted of two counts of aggravated robbery. The trial court properly determined that aggravated robbery has a sentence range of twenty to thirty years. Id. § 40-35-112(c)(2) (1997). Accordingly, the presumptive sentence in the range for aggravated robbery was twenty years. Id. § 40-35-210(c) (Supp. 1998).

The trial court then applied the following enhancement factor:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range[.]

Id. § 40-35-114(1) (1997). The court did not apply any mitigating factors to Small's sentence. Id. § 40-35-113 (1997). Ultimately, the trial court merged Small's two convictions for aggravated robbery, since the same victim was mentioned in both counts of the indictment, before imposing the minimum sentence of twenty years.

The court then considered whether Small should be ordered to serve the twenty-year sentence in this case consecutively to the previous sentences he received for aggravated robbery convictions in docket numbers 01-00926, 01-00913, and 01-00914. The court noted that it had previously sentenced Small to concurrent twenty-year sentences in docket numbers 01-00913 and 01-00914 and that these sentences had been imposed consecutively to the twenty-year sentence in docket number 01-00926, which resulted in an effective forty-year sentence.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. Id. § 40-35-401(d) (1997). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789

(Tenn. Crim. App. 1991). Because it appears that the trial court properly considered the purposes and principles of the sentencing act, our review is de novo with a presumption of correctness. Ashby, 823 S.W.2d at 169.

A trial court, in sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
(6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (Supp. 1998); see also Ashby, 823 S.W.2d at 168. The trial court must also consider the defendant's amenability to rehabilitation. T.C.A. § 40-35-103(5) (1997). The defendant has the burden of showing the impropriety of the sentence. Id. § 40-35-401(d) (1997), Sentencing Comm'n Comments.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. Id. § 40-35-115(a) (1997). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence, as it did in this case, that a defendant fits into at least one of the seven categories in section 40-35-115(b) (1997). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Id. § 40-35-102(1) (1997). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." Id. § 40-35-103(2) (1997).

Here, the trial court determined that consecutive sentencing was warranted because it found that Small was "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood[,]" "an offender whose record of criminal activity [was] extensive[,]" and "a dangerous offender whose behavior indicate[d] little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Id. § 40-35-115(b)(1), (2), (4) (1997).

Regarding the professional criminal factor, the trial court noted that Small was "constantly involved in criminal activity" during the years that he was not incarcerated, and this criminal activity involved him obtaining "either money or goods or whatever for his livelihood." The court further noted that Small at trial had testified that he had committed his

previous convictions in order to "raise money for various types of activities, such as livelihood and drug activity and drugs for himself[.]" At the time of sentencing, Small was forty-five years old. The court noted that Small had listed only one job that lasted five to six months in the presentence report. Although Small's sister and her husband testified that Small worked for the husband on an as needed basis for a period of six to seven months in 1999, there was no other concrete evidence presented that Small had been gainfully employed for the any extended period during his adulthood. Finally, the court stated that "in light of his testimony as well as his criminal activity, the types of offenses and the extensiveness of [them], I am going to find that he is a professional criminal."

Regarding the extensive criminal activity factor, the court stated that it had already "reviewed the extent of [Small's] criminal history and it's fully set out in the notices filed by the State, which have been proven[.]" In applying the enhancement factor regarding his previous history of criminal convictions or criminal behavior, the court noted that Small's criminal history had been "constant." This court has held that "[e]xtensive criminal history alone will support consecutive sentencing." State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)).

Regarding the dangerous offender factor, the trial court stated that the circumstances surrounding the commission of the offense were aggravated because the victim stated that the gun was pointed at her head during the offense. The court noted that the victim was negatively impacted from being held at gunpoint. The Tennessee Supreme Court has stated the following regarding the dangerous offender factor:

> Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.

State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)) (emphasis added). Unlike the other six subsections, the trial court must make additional factual findings for the "dangerous offender" factor because it is "the most subjective and hardest to apply." Id. (quoting State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)). Here, the court found that "the length of [the] sentence[] reasonably relates to the

offense for which he stands convicted" in light the circumstances of this case and Small's extensive criminal history. In addition, the court found that "confinement for an extended period of time . . . [was] necessary to protect society [from Small] given [his] criminal history" since "every time [Small] gets out he involves himself in criminal activity." Finally, the court noted that as Small gets older, his "criminal activity becomes more aggravated." The record shows that the trial court made the additional factual findings required of this factor regarding the severity of the offense and the need to protect the public from future acts of the defendant.

The record here shows that the trial court properly found by a preponderance of the evidence that Small was "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood[,]" "an offender whose record of criminal activity [was] extensive[,]" and "a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(1), (2), (4) (1997). A finding of any one of the factors in section 40-35-115(b) can justify the trial court's imposition of consecutive sentencing. Moreover, regarding Small's contentions that his sentence was greater than deserved for the offense, we note that the trial court specifically stated that "[t]he aggregate length of [his] sentence is inadequate if he were sentenced to concurrent time." We conclude that the trial court did not err in ordering Small to serve his sentence for aggravated robbery consecutively to his previous sentences. Small has failed to show the impropriety of his sentence. See id. § 40-35-401(d) (1997), Sentencing Comm'n Comments. Accordingly, he is not entitled to relief.

## CONCLUSION

Upon our review, we conclude that the trial court did not err in ordering Small to serve his sentence in this case consecutively to his prior sentences. Accordingly, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE